UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER L. SCHAFER,

    Plaintiff,

V.                                                                         CASE NO:

GARI ENTERPRISES INVESTMENTS, LLC,

    Defendant,
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, CHRISTOPHER L. SCHAFER, (hereinafter "Mr. Schafer" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against defendant, GARI ENTERPRISES INVESTMENTS, LLC, (hereinafter "Gari Capital" or "Defendant"), and states the following:

**JURISDICTION AND VENUE**

1. This is a civil action by Plaintiff against his former employer for monetary damages, declaratory relief, and other equitable relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for retaliation under 29 U.S.C. § 215(a)(3) and for violations of the Families First Coronavirus Response Act ("FFCRA"), 29 CFR 826.

2. This is an action for damages that exceed the sum of THIRTY THOUSAND DOLLARS ($30,000.00), exclusive of costs, interest, and attorney's fees, and is otherwise within the jurisdiction of this Court.

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 regarding Plaintiff's FLSA and FFCRA claims.

1

4. Venue is proper in this judicial district under 28 U.S.C. §1391 because all the events giving rise to these claims occurred in Hillsborough County, Florida, which lies within the Middle District.

## PARTIES

5. The Plaintiff is CHRISTOPHER L. SCHAFER, is a resident of Hillsborough County, Florida and is a protected employee under the Families First Coronavirus Response Act ("FFCRA").

6. GARI ENTERPRISES INVESTMENTS, LLC is a Florida Limited Liability Company with a principal Address located at 550 North Reo Street, Suite 100, Tampa, Florida 33609 in Hillsborough County, Florida.

7. At all times hereinafter mentioned, the Defendant performed and conducted business in Hillsborough County, Florida.

8. Defendant expected or should have reasonably expected its acts and business activities to have consequences in Hillsborough County, Florida.

## PRELIMINARY STATEMENT

9. Congress enacted the Families First Coronavirus Response Act ("FFCRA") to protect employees affected by the COVID-19 pandemic.

10. Among the several protections enacted, the Emergency Paid Sick Leave Act ("EPSLA") of the FFCRA requires employers to provide up to two weeks of paid sick leave and job protection for employees who, inter alia, are (a) subject to a governmental quarantine or isolation order related to COVID-19 or (b) advised by a health care provider to quarantine or self-isolate due to concerns related to COVID-19.

11. COVID-19 is a dangerous, contagious respiratory disease caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), to which the general public can be easily exposed, and it is not characteristic of or peculiar to any specific trade, occupation, process, or employment.

12. On January 30, 2020, the World Health Organization ("WHO") declared a "public health emergency of international concern" because of the outbreak of COVID-19.

13. On January 31, 2020, United States Health and Human Services Secretary, Alex M. Azar II, declared a public health emergency indicating that COVID-19 posed a serious public health threat here in the United States.

14. On March 1, 2020, Florida reported its first confirmed case of COVID-19.

15. On March 1, 2020, Florida Governor Ron DeSantis issued Executive Order 20-51 directing the Florida Department of Health to issue a Public Health Emergency. That same day, the Florida Surgeon General and State Health Officer declared a Public Health Emergency existed in the State of Florida because of COVID-19.

16. On March 9, 2020, Florida Governor Ron DeSantis issued Executive Order 20-52 officially declaring a State of Emergency because of COVID-19.

17. On March 12, 2020, the President of the United States declared that the COVID-19 outbreak constituted a national emergency. At that time, 1,645 people from 47 states had been infected with the virus. By March 14, 2020, 56 people had died due to COVID-19 and the numbers were growing every day.

18. On March 16, 2020, the Centers for Disease Control and Prevention ("CDC") issued guidance recommending that people adopt social-distancing measures to reduce their

exposure to the deadly COVID-19 virus. These measures were extended on March 29, 2020, when the number of known deaths involving COVID-19 climbed to 3,169.

19. On March 24, 2020, considering the deadly nature of COVID-19 and its respiratory transmission, Governor DeSantis issued Executive Order 20-83 directing the State Surgeon General and State Health Officer to issue a public health advisory urging the public to avoid social gatherings of 10 or more people and urging those who could work remotely to do so.

20. By late March 2020, COVID-19 had become a national crisis of a scale not seen in the past hundred years. Infection and death rates were growing daily, there was no vaccine to stop the transmission and there was no effective treatment.

## GENERAL ALLEGATIONS

21. On June 2, 2020, Gari Capital hired Mr. Schafer to work as a Maintenance Technician.

22. On July 1, 2020, Mr. Schafer began feeling ill while at work. Mr. Schafer informed his Maintenance Supervisor, Mike Donahue, that he was feeling nauseous, experiencing dizziness and body aches, and believed he was running a fever during his lunch break. Mr. Donahue told Mr. Schafer to, "suck it up and fight through it;" so Mr. Schafer finished his shift. Following this conversation, Mr. Donahue reported Mr. Schafer's illness to Gari Capital Partners' Director of Facility & Property Management, Bill Imbrogno.

23. The next day, on July 2, 2020, Mr. Schafer called in to work before his shift and informed Mr. Donahue that his nausea, body aches and fever had all worsened.

24. On July 3, 2020, Mr. Schafer went to MedExpress West Tampa to seek treatment for his nausea, body aches and fever. MedExpress performed a COVID test and provided a note

stating, "please excuse [Mr. Schafer] from work. He should not return to work until his COVID Test results are back and negative. Results can take 2 to 7 days to come back from the lab."

25. On July 7, 2020, LabCorp returned the results of Mr. Schafer's July 3, 2020, COVID Test to MedExpress. It was a positive test result; SARS-CoV-2, NAA had been detected.

26. Following his COVID Positive test results on July 7, 2020, Mr. Schafer's coworkers, "Dave" and "Geo," quarantined themselves and underwent COVID testing. With Dave and Geo both absent from work, Mr. Imbrogno began texting and calling Mr. Schafer; attempting to pressure Mr. Schaffer to return to work.

27. On July 13, 2020, after Mr. Schafer's fever broke and he was no longer feeling nauseous or suffering from body aches, he returned to MedExpress for another COVID Test.

28. On July 16, 2020, LabCorp returned the results of Mr. Schafer's July 13, 2020, COVID Test to MedExpress with a result that SARS-CoV-2, NAA was detected.

29. Mr. Schafer reported this positive result to Mr. Imbrogno. Following his second COIVD positive test, Mr. Imbrogno informed Mr. Schafer that he would need a negative test from their preferred provider, Physician Partners of America, before he would be allowed to return to work.

30. On July 17, 2020, Mr. Schafer underwent a SARS-CoV-2 test at Physician Partners of America. On that same day Mr. Schafer also went to the Florida Division of Emergency Management's testing center at the Duke Energy Center to have an additional COVID test performed.

31. On July 20, 2020, LabCorp returned the results of Mr. Schafer's July 17, 2020, COVID Test to the Florida Division of Emergency Management with a result that SARS-CoV-2,

5

NAA was not detected. However, the test results from Mr. Schafer's July 17, 2020 test at Physician Partners of America was positive for SARS-CoV-2.

32.     On July 22, 2020, Mr. Schafer returned to Physician Partners of America to have a second test performed.

33.     On July 23, 2020, Mr. Schafer emailed Gari Capital's Managing Director, Ana Riddell, to ask for the results from the COVID tests Physician Partners of America performed on July 17, 2020 and July 22, 2020. Ms. Riddell responded stating that she only had the results from the test performed on July 17, 2020 which noted the RNA of the SARS-CoV-2 virus had been detected and asked Mr. Shafer to get with Mr. Imbrogno regarding any additional COVID Tests that had been performed.

34.     Following Ms. Riddell's response, Mr. Schafer went to Get Well Express Urgent Care and Walk-in Clinic to have a COVID-19 Antibody Test performed. The results of Mr. Schafer's antibody test showed that he was IgM[1] Negative and IgG[2] Positive. Dr. Jaime Jorge Flores evaluated Mr. Schafer's results and provided Mr. Schafer with a note stating that his test was negative, and that Mr. Schafer could return to work according to CDC Guidelines.

35.     In the morning hours of July 24, 2020, Mr. Schafer emailed his July 23, 2020, test results from Get Well Express Urgent Care and Walk-in Clinic and the results of his July 17, 2020, Test performed at Duke Energy Canter to Ms. Riddell.

---

[1] IgM is usually the first antibody produced by the immune system when a virus attacks. A positive IgM test indicates that you may have been infected and that your immune system has started responding to the virus. When IgM is detected you may still be infected, or you may have recently recovered from a COVID-19 infection.

[2] IgG antibodies develop in most patients within seven to ten days after symptoms of COVID-19 begin. IgG antibodies remain in the blood after an infection has passed. These antibodies indicate that you may have had COVID-19 in the recent past and have developed antibodies that may protect you from future infection.

36.     After not receiving a response to his earlier emails, Mr. Schafer sent another email to Ms. Riddell at 7:17 PM with a link to the new CDC guidelines[3] and asked if he could return to work on Monday, July 27, 2020, since his latest COVID Test had come back negative.

37.     Mrs. Riddell responded to Mr. Schafer stating that the owner of Gari Capital does not trust the public testing sites and that the only option of testing that was approved by Gari Capital was Physician Partners of America. Furthermore, Mrs. Riddell stated it did not matter how many negatives Mr. Schafer could get, that he would need a negative test from Physician Partners of America before he would be allowed to return to work.

38.     On July 29, 2020, Mr. Schafer went back to Physician Partners of America to have another COVID Test performed.

39.     On July 30, 2020, Mr. Schafer received a call from Physician Partners of America's Lab Technician, John (unknown last name), claiming that his test results were positive.

40.     On July 31, 2020, Mr. Schafer went to Hillsborough County's Raymond James Stadium COVID-19 coronavirus testing site to have an additional COVID Test performed. Mr. Schaffer then went back to MedExpress West Tampa to have another COVID test performed. MedExpress provided Mr. Schafer a note stating, "please excuse [Mr. Schafer] from work. He should not return to work until his COVID Test results are back and negative. Results can take 3-10 days to come back from the lab."

41.     Later in the day, on July 31, 2020, Mr. Schaffer called Mr. Imbrogno to let him know he underwent another COVID Test. During this phone call, Mr. Imbrogno terminated Mr. Schafer's employment.

---

[3] During the week of July 20, 2020, the CDC released new guidelines for re-testing patients before returning to work. The new CDC guidance stated that an employee could return to work if: at least 10 days have passed since first symptoms: at least 24 hours have passed since their last fever without the use of fever-reducing medicine; and symptoms like cough or shortness of breath showed improvement.

42. Following this phone call, Ms. Riddell sent Mr. Schafer an email with a letter attached confirming his employment termination. In the letter Ms. Riddell wrote, "I write to confirm the termination of your employment effective close of business July 31, 2020, which is within your probationary period. The decision to terminate your employment has been made by your supervisor on the basis that your overall performance and suitability for the role has not met with Gari Capital Partners expectations. The decision is final, and no further action is needed."

43. Mr. Schaffer also learned that he would be paid through his last day of actual work but would not receive any compensation for the period of time he was out sick.

44. On August 3, 2020, Premier Medical Laboratory returned the results of Mr. Schafer's July 31, 2020 test performed at Raymond James Stadium to Hillsborough County's Provider, eTrueNorth, stating, "[Mr. Schafer's] results do not detect SARS-CoV-2. A negative test means that the virus was not present in the sample you provided."

45. On August 5, 2020, LabCorp returned the results of Mr. Schafer's July 31, 2020, COVID Test to MedExpress with a result that SARS-CoV-2, NAA was not detected.

46. Mr. Schafer has incurred costs and attorney's fees in litigating this matter.

## COUNT I
### Unpaid Sick Leave in violation of FFCRA/EPSLA

47. Plaintiff repeats and re-alleges every allegation in the preceding factual allegations section, as though fully set forth herein.

48. Plaintiff was entitled to up to two weeks (or 80 hours) of paid sick leave pursuant to the EPSLA because he was advised by a health care provider to self-isolate due to concerns related to COVID-19.

49. In July 2020, Plaintiff took four weeks of sick leave when he was advised to self-isolate because he was positive for SARS-CoV-2.

50. Defendants failed to pay Plaintiff for any sick leave while he was advised by a health care provider to self-isolate and did not report to work.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages.

52. The violations of law complained of herein were willful; accordingly, Plaintiff also seeks liquidated and/or punitive damages, to the fullest extent available under the law, as well as reasonable attorneys' fees.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendant and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, including overtime wages, compensation, seniority, and other benefits of employment;

D. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

G. Prejudgment interest on all amounts due;

H. An award of Plaintiff's reasonable attorneys' fees and costs; and

I. Such other and further relief as the Court may deem just and proper.

## COUNT II
### Retaliation or Interference in Violation of FFCRA/EPSLA

53. Plaintiff repeats and re-alleges every allegation in the preceding factual allegations section, as though fully set forth herein.

54. The EPSLA prohibits employers from discharging any employee because the employee took qualifying paid sick leave and requires an employer to restore an employee to the same or equivalent position after taking qualifying sick leave. 29 C.F.R. §§ 826.130(a), 826.150(a).

55. Defendants terminated Plaintiff while he was under the advice of a health care provider to self-isolate due to concerns related to COVID-19.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered lost wages and significant emotional distress because of his termination.

57. Plaintiff also seeks liquidated and/or punitive damages, to the fullest extent of the law, as well as reasonable attorneys' fees.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendant and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, including overtime wages, compensation, seniority, and other benefits of employment;

D. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

G. Prejudgment interest on all amounts due;

H. An award of Plaintiff's reasonable attorneys' fees and costs; and

I. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Dated this 8th day of January 2021.

                                                                                         Respectfully submitted by:

                                                                                         */s/ Jason W. Imler, Esq*  
                                                                                         Jason W. Imler  
                                                                                        Florida Bar No. 1004422  
                                                                                        Printy & Printy, P.A.  
                                                                                        3411 W. Fletcher Ave., Suite A  
                                                                                        Tampa, Florida 33618  
                                                                                        Telephone (813) 434-0649  
                                                                                        FAX (813) 423-6543  
                                                                                        jason.imler@printylawfirm.com  
                                                                                        e-service@printylawfirm.com